IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**TINA SORGE,**

    **Plaintiff,**

**v.**

**CAVALRY PORTFOLIO SERVICES, LLC, a Delaware Limited Liability Company, CAVALRY SPV I, LLC, a Delaware Limited Liability Company, and LAW OFFICE of KEITH S. SHINDLER, LTD., d/b/a The Shindler Law Firm, an Illinois corporation,**

    **Defendants.**                                                                **No. 11-cv-297-DRH**

## ORDER

**HERNDON, Chief Judge:**

    Before the Court is defendants' – Cavalry Portfolio Services, LLC, Cavalry SPV I, LLC, and the Law Office of Keith S. Shindler, d/b/a The Shindler Law Firm (collectively defendants unless context dictates otherwise) – motion to compel arbitration and stay proceedings pending arbitration (Doc. 11). Plaintiff, Tina Sorge, objects to the motion, contending that defendants have waived their rights to arbitration by suing plaintiff in a state court action and by making an offer of judgment pursuant to Federal Rule of Civil Procedure 68 in this case. Moreover, plaintiff contends that there is nothing to support that defendants are entitled to enforce the arbitration agreement. For the reasons that follow, the Court grants the defendants' motion to compel arbitration and stay proceedings pending arbitration

(Doc. 11).

## I. Background

On June 19, 2008, plaintiff entered into a disclosure statement, note, and security agreement (the "security agreement") with Citifinancial Services, Inc. ("Citifinancial"), whereby she agreed to borrow a certain amount of money from Citifinancial and pay that money back plus interest in monthly installments. Upon entering into that agreement, plaintiff also entered into an arbitration agreement which became a part of the security agreement. The arbitration agreement contained the following relevant provisions:

> "          **ARBITRATION AGREEMENT**
>
> **THIS ARBITRATION AGREEMENT PROVIDES THAT ALL DISPUTES BETWEEN BORROWER AND CERTAIN OTHER PERSONS ON THE ONE HAND AND LENDER AND CERTAIN OTHER PERSONS ARE ENTITIES ON THE OTHER HAND, EXCEPT THOSE SPECIFIED BELOW, WILL BE RESOLVED BY MANDATORY, BINDING ARBITRATION. YOU THUS GIVE UP YOUR RIGHT TO GO TO COURT TO ASSERT OR DEFEND YOUR RIGHTS (EXCEPT FOR MATTERS THAT ARE EXCLUDED FROM ARBITRATION AS SPECIFIED BELOW). YOUR RIGHTS WILL BE DETERMINED BY A NEUTRAL ARBITRATOR AND NOT A JUDGE OR JURY. YOU ARE ENTITLED TO A FAIR HEARING, BUT THE ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN RULES APPLICABLE IN COURT.**
> . . . .
> . . . You and We agree that either You or We have an absolute right to demand that any Claim be submitted to an arbitrator in accordance with this Arbitration Agreement. If either You or We file a lawsuit, a counterclaim, or other action in court, the other party has the absolute right to demand arbitration following the filing of such action.
> . . . 'Claim' means any case, controversy, dispute, tort, disagreement, lawsuit, or claim now or hereafter existing between You and Us. . . .

> . . . .
> . . . We or You may bring an action, including a summary or expedited proceeding, to compel arbitration of any Claim, and/or to stay the litigation of any Claim pending arbitration in any court having jurisdiction. Such action may be brought at any time, even if a Claim is part of a lawsuit, up until the entry of a final judgment.
> . . . .
> **Claims Excluded from Arbitration.** Neither You nor We may require the other to arbitrate the following types of matters:
> . . . .
> - Any Claim where all parties collectively (including multiple named parties) seek monetary relief in the aggregate of $15,000.00 or less in total relief . . . . In the event that any party fails to specify the amount being sought for any relief, or any form or component of relief, the amount being sought shall, for purposes of this exclusion, be deemed to exceed $15,000.00, unless the matter remains in and subject to the jurisdiction of the small claims court.
>
> Participating in a lawsuit or seeking enforcement of this section by a court shall not waive the right to arbitrate any other Claim.
> . . . .
> Special Acknowledgments. You understand and acknowledge by signing Your name in this Agreement that (i) a court and/or jury will not hear or decide any Claim governed by this Agreement . . . .
>
> READ THE ABOVE ARBITRATION AGREEMENT CAREFULLY, IT LIMITS CERTAIN OF YOUR RIGHTS, INCLUDING YOUR RIGHT TO OBTAIN REDRESS THROUGH COURT ACTION. BY SIGNING BELOW, YOU AGREE TO THE TERMS CONTAINED IN THIS AGREEMENT AND ACKNOWLEDGE THAT THIS DOCUMENT DID NOT CONTAIN ANY BLANK SPACES WHEN YOU SINGED IT."

Plaintiff initialed the first page of the arbitration agreement and signed the second page.

On October 14, 2008, Citifinancial filed a complaint against plaintiff in Illinois state court, specifically Madison County circuit court, alleging that plaintiff had failed to make the required monthly payments required by the security

agreement. Citifinancial alleged that as of October 7, 2008, plaintiff owed $10,936.00 in principle, plus interest, legal expenses, and attorney fees. On March 6, 2009, the circuit court entered an order, granting summary judgment in favor of Citifinancial in the amount $11,175.27 plus $500.00 for attorney fees and costs.

On December 22, 2009, Citifinancial entered into a bill of sale, assignment, and assumption agreement with Cavalry SPV I, LLC, whereby the parties agreed that "[f]or value received and subject to the terms and conditions of the Purchase and Sale Agreement dated June 25, 2009, between [Cavalry SPV I, LLC] and [Citifinanical] (the 'Agreement'), [Citifinanical] does hereby transfer, sell, assign, convey, grant, bargain, set over and deliver to [Cavalry SPV I, LLC], and to [Cavlary's SPV I, LLC's] successors and assigns, all of [Citifinancial's] rights, title and interest in and to the Accounts described in Section 1.2 of the Agreement." Cavalry SPV I, LLC had previously assigned Cavalry Portfolio Services, LLC all of its rights to pursue judicial enforcement of obligations under each of Cavalry SPV I, LLC's accounts.

On December 6, 2010, Cavalry Portfolio Services, LLC, as assignee of Cavalry SPV I, LLC, filed suit against plaintiff in Madison County, Illinois circuit court, seeking to recover $12,828.73 for amounts owed on the security agreement and $350.00 in attorney fees. Attached to the complaint was an affidavit from Kristina Pagni, legal administrator for Cavalry Portfolio Services, LLC, which stated the following:

> "Cavalry Portfolio Services, LLC performs recovery services for its affiliate, Cavalry SPV I, LLC. In performing recovery services for Cavalry SPV I, LLC, I am familiar with and have access to the books and records of Cavalry, SPV I, LLC and of Cavalry Portfolio Services, LLC. . . . That the defendant, TINA SORGE, the account holder(s), opened an account with CitiFinancial on 6/19/2008, which account became delinquent and was charged off on 3/28/2009 (the 'Account'). . . . That the Account was purchased by Cavalry SPV I, LLC on 12/22/2009 and the servicing and collection rights for the account were assigned by Cavalry SPV I, LLC to Cavalry Portfolio Services, LLC[.]"

On February 3, 2011, the circuit court entered an order dismissing the case with prejudice "on oral motion of plaintiff, due to the doctrine of res judicata."

On April 13, 2011, plaintiff filed this suit, alleging that defendants' debt collection action violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "Act"). On May 6, 2011, defendants filed a motion to compel arbitration and stay proceedings pending arbitration (Doc. 11). For the reasons that follow, defendants' motion to compel arbitration and stay proceedings pending arbitration (Doc. 11) is granted.

## II. Analysis

The parties do not dispute that an arbitration was made or that the arbitration agreement covers the claims in the underlying suit, but rather plaintiff contends that defendants have either waived their right to arbitrate or do not have the right to enforce the arbitration agreement. The Court disagrees.

The Federal Arbitration Act (the Act), 9 U.S.C. §§ 1-16, "reflects the fundamental principal that arbitration is a matter of contract." *Rent-A-Ctr., W., Inc. v. Jackson*, 130 S. Ct. 2772, 2776 (2010). "Although it is often said that

there is a federal policy in favor of arbitration, federal law places arbitration clauses on equal footing with other contracts, not above them." *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 740 (7th Cir. 2010).

Under § 4 of the Act, a party may petition the Court for an order directing that arbitration proceed in the manner provided for in the arbitration agreement. Section 4 of the Act provides in relevant part that the Court shall act as follows after a petition under § 4 has been filed:

> "The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed. If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof."

9 U.S.C. § 4.

"As with any contract, the touchstone for interpreting an arbitration clause must be the intention of the parties." *Agco Corp. v. Anglin*, 216 F.3d 589, 593 (7th Cir. 2000). "Whether an issue is subject to arbitration is a simple matter of contract interpretation." *Welborn Clinic v. Medquist, Inc.*, 301 F.3d 634, 639 (7th Cir. 2002)."[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). That is for the arbitrator to decide. *Id.* If the contract contains an arbitration clause, there is a presumption of arbitrability "unless it may be said

with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* at 650. Any doubts should be resolved in favor of coverage. *Id.* (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)). "Despite this strong pro-arbitration tilt, agreements must not be construed so broadly as to force arbitration of claims that the parties never agreed to submit to arbitration." *Welborn Clinic*, 301 F.3d at 639.

   *A. Waiver*

Plaintiff first contends that defendants have waived the right to arbitrate. As support, plaintiff cites to this Court's decision in *Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prods.*, No. 10-cv-00641-DRH-DGW, 2011 WL 1706740 (S.D. Ill. May 5, 2011), contending that the waiver here is more clear-cut than the situation in that case.

"Like any other contractual right, the right to arbitrate a claim may be waived." *Welborn Clinic v. Medquist, Inc.*, 301 F.3d 634, 638 (7th Cir. 2002) (citing *Grumhaus v. Comerica Sec., Inc.*, 223 F.3d 648, 650 (7th Cir. 2000)). The Court will find waiver when "'based on all the circumstances, the party against whom the waiver is to be enforced has acted inconsistently with the right to arbitrate.'" *Welborn Clinic*, 310 F.3d at 638 (quoting *Grumhaus*, 223 F.3d at 650-51). "A party may waive its contractual right to arbitration either explicitly or through an implicit course of conduct." *Welborn Clinic*, 310 F.3d at 638 (citing *Grumhaus*, 223 F.3d at 650). "Litigating a claim is clearly inconsistent with any

perceived right to arbitration." *Welborn Clinic*, 310 F.3d at 638. This is because a court does "not want parties to forum shop, taking a case to the courts then, if things go poorly there, abandoning their suit in favor of arbitration." *Id.*

In *Kawasaki*, the parties had been involved in litigation for years before entering into a settlement agreement that contained an alternate dispute resolution provision. Pursuant to the settlement agreement, the defendants were to obtain an agreement from a third party bank to subordinate certain security interests. Relying on defendants' assertions that the bank would agree to subordinate the security interests, the parties finalized the settlement agreement. Thereafter, defendants notified plaintiff that the bank would not subordinate the security interests. Consequently, plaintiff sought to vacate the stipulation of dismissal entered in one of its cases. Both parties briefed the issues for the court who ultimately denied plaintiff's motion. The decision was upheld on appeal. Plaintiff then filed suit in this Court, alleging numerous causes of action stemming around the settlement agreement. The defendants then filed their motion to dismiss, or in the alternative, to stay plaintiff's action pending arbitration.

In denying the defendant's motion, this Court found that although the case the defendants were seeking to dismiss or stay was only initiated six months ago, the dispute between the parties had been going on for nearly two years. *Id.* at *5. Further, the record revealed that defendant had submitted briefs before the district court and participated in the appeal. *Id.* Thus, the Court found that the defendants had failed to seek an order to arbitrate or stay at the first opportunity,

and that the defendants had acted inconsistently with the right to arbitrate and thus implicitly waived their right to arbitrate. *Id.*

The case here is clearly distinguishable. First, while plaintiff has been involved in two prior lawsuits for claims that would be covered by the arbitration agreement, those claims were specifically excluded by the arbitration agreement because both lawsuits sought monetary relief in the aggregate of $15,000 or less. The provision explicitly excluded the first two lawsuits against plaintiff and further stated that "[p]articipating in a lawsuit or seeking enforcement of this section by a court shall not waive the right to arbitrate any other Claim."

Second, unlike in *Kawasaki*, defendants here have sought an order to arbitrate or stay at the first opportunity available to them in this case, a separate cause of action filed by plaintiff that is distinct from the first two suits filed against plaintiff, filing this motion in response to the complaint twenty-three days from the date the complaint was filed. Furthermore, the arbitration agreement specifically provides that an action to compel arbitration "may be brought at any time, even a Claim is part of a lawsuit, up until the entry of a final judgment." This is not a situation where defendants tested the waters in litigation, found it undesirable, and then tried to proceed to arbitration. See *Welborn Clinic*, 301 F.3d at 638. Thus, defendants have not acted inconsistently with the right to arbitrate.

Plaintiff next argues that by tendering a Rule 68 offer of judgment, defendants have acted inconsistently with the right to arbitrate. This is simply not

true.  In fact, "[e]vidence of an unaccepted offer is not admissible except in a proceeding to determine costs."  FED. R. CIV. P. 68(b).  Moreover, "[t]he purpose of Rule 68 is to encourage the settlement of litigation."  *Delta Air Lines, Inc. v. August*, 450 U.S. 346, 352 (1981).  To hold defendants acted inconsistently with the right to arbitrate and therefore waived the right to arbitration would fly in the face of the purpose behind the rule and discourage settlement attempts – something the Court refuses to do.

    *B. Assignment*

Lastly, plaintiff argues that defendants have failed to show they are the assignee of the security agreement between Citifinancial and plaintiff, and are thus covered by the arbitration agreement.  Again, the Court disagrees.

The record before the Court reveals that Citifinancial assigned its right to plaintiff's security agreement to Cavalry SPV I, LLC, on December 22, 2009.  Cavalry.  Cavalry SPV I, LLC, had previously assigned Cavalry Portfolio Services, LLC all of its rights to pursue judicial enforcement of obligation under each of Cavalry SPV I, LLC's accounts.  All of this was further supported by Kristina Pagni's affidavit.  In fact, plaintiff herself plead in her complaint that "[a]t some point in time, [d]efendant [Cavalry SPV I, LLC] bought Ms. Sorge's CitiFinancial debt and assigned it to its sister company, Cavalry [Portfolio Services, LLC], for collection."  Thus, there is nothing in the record to support that Cavalry SPV I, LLC, was not Citifinancial's assignee.

### III.  Conclusion

The arbitration agreement here clearly covers the dispute at issue. Nothing in the record supports plaintiff's arguments that defendants acted inconsistently with the right to arbitrate or were not assigned the right to arbitrate. Accordingly, defendant's motion to compel arbitration and stay proceedings pending arbitration (Doc. 11) is granted. The parties are directed to proceed to arbitration in accordance with the terms of the arbitration agreement. The hearing and proceedings under the arbitration agreement shall be within this district. This matter is stayed pending the outcome the arbitration. The parties are directed to notify the Court when arbitration has concluded.

**IT IS SO ORDERED.**

Signed this 4th day of October, 2011.

Digitally signed by David R. Herndon
Date: 2011.10.04 14:37:16 -05'00'

**Chief Judge**
**United States District Court**